# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH FARTHING, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 11-1052 |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| Defendant. | : | |

**Henry S. Perkin, M.J.**                                                                                          **August 2, 2013**

## MEMORANDUM

This matter is before the Court on Defendant's Third Motion in Limine Withdrawing Defendant's Pending Motion in Limine filed on June 17, 2013. Plaintiff's Memorandum in Response was filed on July 10, 2013, Defendant's Supplemental Brief in Support of the Motion was filed on July 26, 2013, Plaintiff's Memorandum in Opposition of the Defendant's Supplemental Brief was filed on July 29, 2013 and Defendant's Reply to the Response to the Supplemental Brief was filed on July 29, 2013. Having reviewed the contentions of the parties, the Court is prepared to rule on this matter.

### *Bolden* Consent Decree

Defendant moves to exclude evidence of *Bolden v. Pennsylvania State Police*, Civ. A. No. 73-2604, a class action race discrimination case filed in 1973 and its progeny as well as testimony of Benjamin Brooks, Tyree Blocker and Mark Lomax. Defendant notes that the *Bolden* litigation applied to hiring and promotion within the ranks of the PSP, which are not at issue in the instant case. In addition, Defendant contends that the *Bolden* litigation is temporally remote from the incidents in this case. Plaintiff vigorously opposes exclusion of references to the

*Bolden* litigation. The *Bolden* Consent Decree was dissolved in 1999. While this Court agrees that the *Bolden* litigation is temporally remote from the incidents in this case, the fourteen years since dissolution of the *Bolden* consent decree is relevant to Plaintiff's racial discrimination claims. Accordingly, although references to *Bolden* will be excluded at trial, Plaintiff may introduce evidence regarding events which have transpired since that time.

Events Outside the Scope of the EEOC Charge

Defendant moves to preclude all references beyond the scope of Plaintiff's EEOC charge including the denial of honorable discharge and any evidence of alleged racial discrimination encountered by Plaintiff in the ESS before the events at issue in his EEOC charge. Defendant notes that Plaintiff's denial of an honorable discharge occurred over nine months following Plaintiff's retirement and alleged discriminatory treatment of Plaintiff by Lt. Kruse or Lt. Kulick, Lt. Kruse's predecessor, occurred years before the events at issue. For example, Plaintiff may attempt to place on the record that Lt. Kulick chose a white corporal rather than Plaintiff as second in command or that Lt. Kruse chose a white corporal to fill in when he was on annual leave. Defendant claims that these incidents are untimely and should be barred because a plaintiff may only bring suit in federal courts on claims within the scope of the EEOC charge itself or "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before [the EEOC]." Mot. at 5 (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1025–26 (3d Cir. 1997). Moreover, Defendant contends that such information would lead to explanations of why those events occurred, which will lead to a separate mini-trial, confuse the jury and otherwise unduly lengthen trial.

Plaintiff responds that the evidence that he was subject to racial discrimination at the ESS before the events giving rise to this action is being introduced solely for background purposes, and not as a distinct claim for relief which is wholly consistent with Supreme Court and Third Circuit precedent. *See, e.g., National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 521 (3d Cir. 2003). Plaintiff further argues that the timely filing of an EEOC charge is not a jurisdictional prerequisite to bringing suit in federal court but is subject to the doctrines of waiver and estoppel. *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393 (1982); *accord Waiters v. Parsons*, 729 F.2d 233, 236 (3d Cir. 1984). Plaintiff notes that the Defendant never raised the issue of Plaintiff's alleged failure to exhaust his administrative remedies in a motion to dismiss or in its summary judgment motion. Even if Defendant had not waived the issue or is not estopped from raising it, Plaintiff argues that "[t]he relevant test in determining whether [a plaintiff] was required to exhaust . . . administrative remedies. . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters*, 729 F.2d at 237. Plaintiff argues that he meets that test because his EEOC charge alleged continuing racial discrimination against him by the PSP, it pointed specifically to the PSP's history of intentional racial discrimination against minorities (as evidenced by the *Bolden* litigation) and, as to himself, referenced being denied the assignment to head the ESS and then being banished to a year of desk duty at the Gap. Subsequently, and while his case was still pending with the EEOC, Plaintiff claimed that he was forced to retire from the PSP and later was denied an honorable discharge. Both of these issues were included in his federal court lawsuit as part of his Title VII race discrimination claim against the PSP.

3

As Defendant notes, in determining the scope of the investigation, this Court must examine "1) whether the disputed claim would have been discovered by the EEOC in the course of a reasonable investigation; and 2) whether the claim 'which would have been uncovered [was] reasonably within the scope of the charge filed with the EEOC.'" Supp. Br. at 4-5 (quoting *Tourtellotte v. Eli Lilly and Co.*, 2013 WL 1628603, at *4 (E.D. Pa. Apr. 16, 2013)(citing *Davis v. Kraft Foods N. America*, 2006 WL 237512, at *6 (E.D. Pa. Jan. 31, 2006)(quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978)). In this case, we agree with Plaintiff that the disputed claim as to the background information of Plaintiff's treatment in the ESS prior to the events giving rise to this action and the denial of an honorable discharge to Plaintiff would have been discovered by the EEOC in the course of a reasonable investigation and that those claims were reasonably within the scope of the charge filed with the EEOC because they substantially overlap with Plaintiff's constructive discharge claim in his exhausted administrative charge. Thus, Defendant's Motion is denied with respect to evidence of Plaintiff's denial of an honorable discharge and evidence of alleged racial discrimination encountered by Plaintiff in the ESS before the events at issue in his EEOC charge.

### *Carter v. Commonwealth of Pa, PSP*

Next, Defendant seeks to preclude Plaintiff from introducing at trial the complaint and answer and all references to the case *Carter v. Commonwealth of PA, PSP*, No. 08cv5421 (E.D. Pa.). *Carter* was a class action in which the plaintiffs raised Title VII and ADEA claims regarding the alleged restriction of overtime compensation to minority plaintiffs assigned to a PSP troop with duty related to construction work on the Pennsylvania Turnpike. The context is a 400-hour overtime limit on troopers assigned to certain duties that do not include ESS duties. In

that context, the PSP admitted:

> 125. As a result of the Grievance Board's decision, in mid-2007, the PSP implemented 400 hour limit on overtime per trooper.
>
> 129. However, while the troopers subject to the August 22, 2007 cease and desist list were prohibited from working overtime, other troopers throughout the department continued to receive overtime hours far exceeding the departments imposed 400 hour restriction rule, benefitting their yearly salary and retirement earnings.

Defendant contends that the *Carter* case has no relevance to Plaintiff's case because the instant case involves ESS, a specialized unit not subject to the 400-hour limit that applied to overtime for construction work on the turnpike. The admission that the PSP had not enforced its overtime policy for troopers assigned to the turnpike is a far cry from overtime abuse/theft. Alternatively, Defendant argues that unfair prejudice to the PSP outweighs any probative value, because a jury could inappropriately confuse what applies to non-specialized units such as a construction crew and what applies to ESS. Defendant contends that any clarification between the ESS and non-specialized rank and file including an explanation that the 400-hour restriction does not apply to ESS, would lead to additional confusion and unduly lengthen trial.

Plaintiff responds that there is a "well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party." *Hardy v. Johns-Mansville Sales Co.*, 851 F.2d 742, 745 (5th Cir.1988); *see Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, 2006 WL 3041102 at *4 (D.NJ. Oct. 26, 2006); *see also* David F. Binder, *Hearsay Handbook* § 35:1 (4th ed. 2012) (noting that courts have deemed it reversible error to preclude assertions made by a party-opponent in a

pleading in another case). Plaintiff contends that these two admissions are relevant in this case because the first relates to the timing of the newly-promulgated 400 hour rule which was adopted in 2007, the same year that the PSP undertook its investigation of Plaintiff for overtime abuse. Plaintiff notes that there is no evidence that the 400 hour rule was applied to officers working in the ESS, and a jury could conclude that the PSP did not consider it important to limit the number of overtime hours that ESS could work because their hours were a function of their protectees' schedules. Second, Plaintiff contends that these admissions are relevant because they support his claim that the PSP singled him out for selective enforcement. In Plaintiff's Supplemental Memorandum of Law, Plaintiff's counsel states that he will present the Defendant's Answer in *Carter* for one purpose: establishing the facts that the Defendant had a 400 hour overtime limit that it did not enforce.

Defendant distinguishes *Carter* as not relevant to the instant litigation because some of the plaintiffs in *Carter* were white and the overtime limit in Carter is not applicable to specialized units such as ESS. This Court does not agree with Defendant, however, that clarification between the ESS and non-specialized rank and file including an explanation that the 400-hour restriction does not apply to ESS, would lead to additional confusion and unduly lengthen trial. Accordingly, Defendant's Motion is denied with respect to the *Carter* litigation. Further, the parties are granted permission to call Attorneys Tucker and Henzes to testify at trial.

<u>PSP Statistics</u>

Defendant next seeks to exclude Plaintiff's use of evidence of Defendant's personnel statistics/demographic data with breakdowns by minority percentages, such as enlisted retirements, honorable discharges, and temporary transfers. Because the parties have not

6

exchanged exhibits, this portion of Defendant's Motion is denied without prejudice for Defendant to raise it after the exhibits are exchanged and the Court has the subject exhibits before it.

### Statements By Cindy Smyser.

Plaintiff testified at his deposition about statements allegedly made to him by Ms. Smyser, who was a member of Governor Rendell's staff, was not deposed and who is now deceased. Defendant contends that any statements by Ms. Smyser or references to statements by her are hearsay and no exceptions apply to render them admissible. Plaintiff argues that Ms. Smyser's statements will not be introduced for the truth of the matter asserted, i.e., that the Defendant discriminated against Plaintiff by not assigning him to head the ESS, but rather as circumstantial proof of the timing and reason for the Defendant's decision to reassign Plaintiff and impose a "no contact" order on him.

Plaintiff testified at his deposition that on October 25, 2007, the morning that he was informed of his reassignment to desk duty at Fort Indiantown Gap, Ms. Smyser asked him why Bruce George was appointed as detail leader instead of Plaintiff and asked "are they doing this to you because you're black?" She then told Plaintiff that she "was being completely left in the dark as to what was going on with the detail, and she wanted to know what was happening because that was her responsibility." She then stated to Plaintiff that "she was going to call Colonel Miller to find out why – to find out what was going on." N.T. Farthing, pp. 106-107.

Clearly, Ms. Smyser's question "are they doing this to you because you're black?" can be introduced for no other purpose than the matter asserted, that Plaintiff was discriminated against based on his race, which is one of the reasons asserted by Plaintiff for the Defendant's

7

decision to reassign him and impose a no contact order on him.  Accordingly, reference to any statements by Ms. Smyser, an unavailable witness, will be excluded.

## Evidence Regarding Christopher D'Amico's Character

Defendant moves to exclude character evidence regarding Christopher D'Amico, the complainant in the investigation into overtime abuse against Plaintiff and Lt. Kruse, as unfairly prejudicial and may cause the jury to infer propensity or intent to discriminate against Defendant.  Defendant contends that jury confusion and the extended length of trial would outweigh any probative value that Mr. D'Amico's character evidence may have beyond what is in the Internal Affairs Investigative Report regarding overtime abuse itself.  Defendant argues that Plaintiff should not be permitted to turn this trial into a trial about Mr. D'Amico, especially since he retired from the PSP under sudden circumstances and Defendant contends that Mr. D'Amico is not an appropriate comparator to Plaintiff.  Defendant specifically moves to exclude evidence which it contends is not related to the general investigation report about Plaintiff including all references to an alleged falling out between D'Amico and Governor Rendell, all evidence related to D'Amico's sexual activity apart from what is contained in the General Investigation Report For IAD 2007-0002 and D'Amico's giving the bracelet to Sous-Chef Yancey, who was convicted years later.

Mr. D'Amico's credibility and motives in submitting his overtime complaint against Plaintiff are at issue and evidence of his credibility is admissible under Federal Rule of Evidence 404(b) to show his intent and motive in filing his complaint.  Defendant's Motion to preclude specific evidence of all references to an alleged falling out between D'Amico and Governor Rendell, all evidence related to D'Amico's sexual activity apart from what is contained

8

in the General Investigation Report For IAD 2007-0002 and D'Amico's giving the bracelet to Sous-Chef Yancey, who was convicted years later are premature, and Defendant's Motion must be denied without prejudice for Defendant to object to introduction of this specific evidence at trial.

Plaintiff's Exhibit No. 31
January 14, 2004 Email Exchange Between Christopher D'Amico and Thomas Tarsavage

Defendant seeks to exclude Plaintiff's Exhibit 31, a January 13, 2004 e-mail exchange between Christopher D'Amico and Thomas Tarsavage which was attached as an exhibit to Sgt. Sharif's general investigation report regarding overtime abuse by Lt. Kruse and Plaintiff. Defendant contends that the email has no probative value, because nothing in the adjudication of the charges against Plaintiff and Lt. Kruse was decided based solely on what Mr. D'Amico said and the admission of the email or any reference to it will create undue publicity and sidetrack the jury from the material issues in this case. Defendant notes that Sgt. Sharif included the email in his report because it reflected negatively on Mr. D'Amico's character. Sharif Dep. at 118. Plaintiff responds that since the email was good enough to be part of the Defendant's official report, it is fair game to introduce it at trial. This Court agrees with Defendant, therefore the email and references to the email will be excluded from evidence at trial.

Activities Regarding Prostitution in Southeast Asia

Defendant seeks to exclude evidence regarding activities by Lt. Kruse and Lt. Lawver regarding prostitution in Southeast Asia. Defendant argues that Plaintiff can only show a strong suspicion that Kruse and Lawver paid for prostitution in Southeast Asia until Martin's

9

admission in 2010 well after Kruse and Lawver separated from the PSP in January of 2009. Defendant argues that nothing was "of record" until after Kruse and Lawver retired from PSP to show that they solicited prostitutes or that their solicitation of prostitutes was illegal in the country where it occurred, therefore nothing about their sexual behavior is material. Defendant contends that Plaintiff cannot show that timing from when any such hypothetical report was received could possibly have rendered discipline possible prior to Kruse's and Lawver's retirements in January of 2009, which, according to Defendant, precludes Plaintiff from using innuendo to suggest that Defendant did not investigate members with sex-related violations worse than Plaintiff's violations. Defendant contends that any reference even to just prostitution, let alone sex trafficking, will result in a complex voir dire and an even more complex, convoluted trial suggesting an unfair perspective of the PSP to the jury as well as a trial within a trial. As such, Defendant contends that prejudice would far outweigh any perceivable evidentiary value.

Plaintiff notes in response that during the course of the PSP's overtime abuse investigation of Lieutenant Kruse and Plaintiff, that Lt. Sharif uncovered evidence that Kruse and two other white Lieutenants, Brad Lawver and Douglas Martin, had engaged in the solicitation of prostitutes in southeast Asia. Sharif Dep. at 52-59. The PSP opened a "sexual misconduct" internal affairs investigation regarding these three officers. *Id.* at 54-57. Together, the PSP and the F.B.I. were jointly involved in this sexual misconduct investigation. Pawlowski Dep. at 89. At no time was Plaintiff a subject of it. Skurkis Dep. at 171; Sharif Dep. at 123-124. According to the United States Attorney's Office for the Middle District of Pennsylvania, the F.B.I. referred the case back to the PSP for follow-up. *See* Unopposed Motion of the United States for a

Protective Order, at ¶ 3.

Sgt. Sharif, who was assigned by the PSP to the sexual misconduct investigation, testified that he worked virtually full time on that case starting in November 2007. Sharif Dep. at 165-166. In the course of his investigation, he found "hundreds and hundreds" of internet images and e-mails that supported the charges against Kruse, Lawver and Martin. *Id.* at 160-161. The PSP itself concluded their solicitation activities violated the law of Thailand, the law of Pennsylvania and the PSP's own Field Regulations. *Id.* at 162-163; *see also* Sharif's General Investigation Report, IAD 2009-0101 and accompanying documents. Despite the evidence against Kruse, Lawver and Martin, the PSP took no disciplinary action against them for their infractions. Pawlowski Dep. at 185, 191-194. Each was allowed to retire, despite the fact that had the PSP's Disciplinary Officer, Captain Bryon Locke, been made aware of the evidence against them, he would have had each of them subject to a court-martial. Locke Dep. at 30-31, 52-5 3.

This evidence is admissible to show at trial that non-protected class members, who committed acts of "comparable seriousness" to the plaintiff's, were treated more favorably. *See McDonnell Douglas*, 411 U.S. at 804; *Ansell*, 347 F.3d at 521. Accordingly, Defendant's Motion is denied as to evidence regarding activities by Lt. Kruse and Lt. Lawver regarding prostitutes in Southeast Asia.

<u>Testimony of Sherwin Bostick and Michael Napier</u>

Defendant next moves to preclude the testimony of Sherwin Bostick and Michael Napier. Both men, who are African-American, worked with Plaintiff in the ESS, Mr. Napier for about 13 years and Mr. Bostick for about 8 years. Mr. Bostick retired in 2003 and Mr. Napier

11

retired in October of 2008. As to Mr. Bostick, Defendant seeks preclusion of his testimony because he has direct knowledge only about events he witnessed as an ESS member prior to his retirement in 2003. Bostick Dep. at 6-7. Defendant contends that if Mr. Bostick were permitted to testify about his own alleged experiences of race discrimination or what he perceived to be race discrimination in the treatment of others, it would lead to a trial within a trial and prejudice would outweigh any perceivable evidentiary value. In addition, because Mr. Bostick moved to Florida upon retiring, Defendant argues that his testimony regarding events after his retirement must be based upon what he heard from other ESS members and except for what Plaintiff told Mr. Bostick during telephone conversations after Mr. Bostick's retirement, everything he learned about any alleged discrimination in ESS is through hearsay. Anything told by Plaintiff to Mr. Bostick, according to Defendant, is inadmissible as duplicative self-serving admissions which add nothing to what Plaintiff himself can testify to directly and would confuse the jury and unnecessarily lengthen the trial. *See* F.R.E. 801(d).

As to Mr. Napier, Defendant argues that he was not working in June through November of 2006 because he was on medical leave, and knows of the investigation into Kruse and Plaintiff only through hearsay. Defendant further argues that Mr. Napier's knowledge of alleged race discrimination within ESS once Lt. Kruse became detail leader, is limited to his understanding of D'Amico's complaint, his hearing D'Amico's "racist" toast at a wedding in 2004 or 2005, his understanding that Kruse communicated policy decisions with white supervisors but not black supervisors (information that has to be hearsay because Napier was not a supervisor), the fact that Kruse retained Cpl. Laughner as second in command after the former ESS head, Lt. Kulick, retired in 2002, when Laughner had less seniority in rank than Farthing,

12

that Kruse appointed Cpl. George second in command after Laughner retired, and that he heard Farthing's self-serving descriptions of his assignment to protect the residence of the Lt. Governor at Fort Indiantown Gap. Defendant contends that none of the above testimony should be admissible because most regards immaterial events from years before the events at issue, and the rest is hearsay. Moreover, Defendant argues that it is unduly prejudicial.

Plaintiff notes that both Messrs. Bostick and Napier testified in their depositions about racism in the ESS, both during the time it was headed by Lieutenant Kruse and, before that, when it was headed by Lieutenant Kulick. This racism, they testified, cost black officers -- including themselves and plaintiff Farthing -- ESS command and other desirable assignments to which they were entitled. They also testified about Plaintiff's skills, abilities and professionalism; about yearly performance reviews and their significance; about the way overtime was assigned in the ESS; about Plaintiff's re-assignment to desk duty at the Gap and the embarrassment that caused him; and about the significance of receiving, or being denied, an honorable discharge.

The testimony of both Mr. Bostick and Mr. Napier as Plaintiff's co-workers is relevant to Plaintiff's claims in this case and a blanket exclusion of this evidence is incompatible with the way that employment discrimination cases must be tried. *See Quinn v. Consolidated Freightways Corp. of Delaware*, 283 F.3d 572, 578 (3d Cir. 2002). Thus, Defendant's Motion is denied as to the testimony of both Mr. Bostick and Mr. Napier at trial.

### How Cpl. Loughner Became Second In Command and How Cpl. George Became Scheduler of the ESS

Defendant next moves to preclude evidence that (1) Plaintiff was bypassed from

becoming the executive officer of the ESS in favor of Corporal Robert Loughner; and (2) that Plaintiff was initially bypassed in joining the ESS in favor of a white officer. Defendant argues that the probative value of this ESS history from early in the last decade, specifically a decision before 2003 taken by prior ESS head, Lt. Kulick, making Cpl. Loughner, who is white, the second in command, rather than Plaintiff who had more ESS experience, and Plaintiff's expected testimony that he joined the ESS in the 1990s only after successfully grieving his non-appointment . While some historic background may be tangentially related to the current dispute, Defendant argues that its probative value is outweighed by the potential for prejudice and confusion. Plaintiff responds that the Third Circuit has repeatedly held, so long as evidence is relevant, it rarely should be precluded under Rule 403.

In weighing this evidence pursuant to F.R.E. 403, we find that the probative value of this evidence is outweighed by the potential for prejudice. Moreover, although we have precluded Plaintiff from introducing evidence related to the *Bolden* litigation, the relevance of the employment decisions made with respect to Plaintiff far outweigh any danger of unfair prejudice to Defendant. This aspect of the Defendant's Motion is denied.

### Non-Issuance of Performance Evaluations to Plaintiff in 2007 and 2008

Defendant moves to preclude evidence of the non-issuance of annual performance reviews to Plaintiff in 2007 and 2008 as not relevant because some ESS members received performance reviews in 2007 and 2008 but other ESS members also did not receive performance reviews in those years. Plaintiff intends to introduce evidence that he received no performance review in either 2007 or 2008 as supportive of his constructive discharge claim and also his claim that he was essentially "excommunicated." This information is relevant to Plaintiff's claims in

this case, particularly Plaintiff's claim that Defendant did not follow its own rules regarding performance reviews and Defendant will have an opportunity to present evidence explaining the reasons for issuance and non-issuance of performance reviews. Defendant's motion as to annual performance reviews is denied.

<u>Testimony By The Hon. Marjorie O. Rendell</u>
<u>Former Governor Schweiker and Former Governor Ridge</u>

Defendant moves to preclude the testimony at trial of the Honorable Marjorie O. Rendell and former Governors Mark Schweiker and Tom Ridge on the basis that their testimony will cause prejudice by unduly influencing the jury in addition to causing media publicity. Plaintiff contends that the testimony of these three high ranking individuals is necessary to support his claims of pretext, and each witness has relevant facts to present including plaintiff's dedication, loyalty and professionalism and when Plaintiff was assigned to protect them, he was subject to their schedules, day or night. Moreover, Plaintiff correctly notes that their status as fact witnesses is no different than that of any other witness in the case, and the Court will so instruct the jury. Thus, Defendant's Motion is denied as to the trial testimony of Judge Rendell and former Governors Schweiker and Ridge.

<u>The Motion of the United States for A Protective Order</u>

Defendant moves to preclude introduction at trial of the "Unopposed Motion of the United States for a Protective Order" on the basis that it will confuse the jury members who are not learned in the law. Plaintiff responds that an averment by the Assistant United States Attorney in that motion for protective order that the sexual misconduct investigation involving Kruse, Lawver and Martin "was referred to the PSP without further action by the F.B.I." is

15

relevant to Plaintiff's claim that the Defendant, although it was aware of the misconduct of these three former troopers for some time, did nothing to discipline them. Pursuant to Federal Rule of Evidence 403, the possibility of prejudice does not outweigh the probative value of this evidence. Accordingly, Defendant's Motion is denied as to the motion for protective order.

### The Expert Report of Plaintiff's Economist, Andrew Verzilli, M.B.A.

Defendant moves to preclude introduction of the expert report of Defendant's economic expert, Andrew Verzilli, M.B.A., from evidence as inadmissible and hearsay. Plaintiff responds that Mr. Verzilli was disclosed as Plaintiff's economic loss expert during discovery, Defendant chose not to depose Mr. Verzilli and Defendant did not file a *Daubert* motion to preclude Mr. Verzilli's testimony. Mr. Verzilli will be permitted to testify regarding Plaintiff's economic loss and refer to his report during his testimony. As there is no valid reason proffered to exclude Mr. Verzilli's testimony or introduction of his expert report into evidence, Defendant's motion is denied in this respect.

### Expert Testimony of Dr. Garry Mueller

The trial testimony of Dr. Mueller will be limited to the facts gained during his treatment of plaintiff. Further, Dr. Mueller will not be permitted to set forth any expert causation or prognosis testimony based on facts beyond his treatment of plaintiff. *See Allen v. Parkland Sch. Dist.*, No. 06-1560, 230 Fed. Appx. 189, 2007 U.S. App. LEXIS 9671 (3d Cir. Apr. 27, 2007). To allow otherwise would circumvent Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. *See Lauria v. AMTRAK*, No. 95-1561, 1997 U.S. Dist. LEXIS 3408, at *4-*6 (E.D. Pa. Mar. 24, 1997)(Hutton, J.).

<u>Sgt. Sharif's 2013 Discrimination Lawsuit and EEOC/PHRA Charge</u>

Plaintiff concedes that he does not intend to introduce any evidence regarding Sgt. Farzad Sharif's EEOC charge or Sgt. Sharif's pending discrimination lawsuit in the United States District Court for the Middle District of Pennsylvania entitled *Sharif v. Manning*, 1:13-cv-0096 (M.D. Pa.), which was filed against the Defendant and several of its former and current officials.

For the foregoing reasons, Defendant's Motion in Limine is granted in part and denied in part. An Order consistent with this Memorandum will be contemporaneously filed.

BY THE COURT:

*/s/ Henry S. Perkin*
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE